Howe v. Willard.

GEORGE HOWE v. HENRY A. WILLARD.

[IN CHANCERY.]

*Chancery. Injunction. Contempt.*

Failure to have service made of the original subpœna with the bill and injunction, seasonably for the term to which the subpœna was made returnable, does not operate a discontinuance of the proceedings, so that the order of the chancellor, and the injunction issued in pursuance of it, become vacated and void.

Suing time having expired before service could be made, the complainant had the right to another subpœna returnable to the next term.

Section 55, ch. 29, Gen. Stat. enacts that "no injunction shall be issued in any case until the bill shall have been filed;" Section 56 "the issuing of a subpœna attached to a bill, shall be deemed the filing of the bill." *Held*, that it was not the purpose of the latter section to exclude any other mode of filing a bill, but rather, to provide a mode by which, for the purpose of issuing an injunction, it might be regarded as filed without requiring it actually to be filed in court, according to the law and practice independently of the statute.

Where a defendant is a non-resident, the complainant may file his bill with the clerk of the court without a subpœna appended, and get an order of publication, and the bill would be filed so as fully to comply with the statute requiring it to

Howe *v.* Willard.

be filed before an injunction should be issued. The taking of a subpœna and failing to get it served could not affect the complainant's right which he would have had if he had not taken such subpœna.

Sections 19 and 20, ch. 29, Gen. Stat., do not purport to make the bill and subpœna one process.

In the English chancery law the subpœna is entirely distinct from the bill for all purposes.

When a bill has been presented to the chancellor for some preliminary or interlocutory order warranted by the law, the cause is then to be regarded as *pending in court* for all the purposes arising from or incident to such order; and for all such matters the court is at all times open and accessible to all the parties affected thereby.

In case of an injunction, the cause is in fact pending in the court from the time the chancellor makes the order for issuing the injunction. And though the defendant is not *bound* to appear before service and answer to it, still he is at liberty to do so, and it would not be permissible for the orator to object.

For improper delay in the service, the defendant may appear before the chancellor and move for the dissolution or discharge of the injunction; or for service; or in term time may have the cause entered on the docket, and it would then stand for all proper proceedings the same as if the bill and injunction had been formally served.

But if the defendant is apprised of the existence of the injunction, it is operative upon him and he may not disregard and violate it, though service may have been improperly delayed to such an extent as to constitute adequate ground for a dissolution.

The most that has been held in respect to the effect of an improper use of an injunction, is, that such impropriety, may be good cause for a dissolution or discharge on motion.

THIS was a petition to the Court of Chancery setting forth that a writ of injunction was duly issued restraining one Henry A. Willard, and all persons acting under him from removing from the possession of the petitioner a certain law library belonging to the late Hon. Wm. C. Bradley, or in any manner disturbing or interfering with the possession of said library by the petitioner; that the writ with the bill of complaint whereon the same was granted, and a subpœna, were placed in the hands of an officer to be served when ever he could find said Willard in his precinct; that on the 7th day of September, 1867, at Brattleboro, in the county of Windham, one Walter Taylor, sheriff of said county, having in his possession a writ

of replevin in favor of said Willard against the petitioner, commanding him to replevy said library, in company with Charles B. Eddy, Esq., attorney for the plaintiff in said writ, with full knowledge of said writ of injunction, after the same had been served upon them and in defiance thereof, broke open the office of the petitioner and forcibly took said ·library therefrom, and that they have ever since held the same and kept it from the petitioner in violation and disregard of said injunction; and praying that said Walter Taylor and Charles B. Eddy be made to appear before said court to show cause why they should not be dealt with for their contempt.

Testimony was taken, and the cause was heard before BARRETT, Chancellor, at the General Term of the Supreme Court, at Montpelier, November, 1867, PIERPOINT, Ch. J., PECK, WILSON and STEELE, J. J., hearing the arguments as advisory.

*H. H. Wheeler* and *Charles N. Davenport,* for the orator, cited Gen. Stat. 249, §§ 15, 19; *Payne* v. *Cowan,* 1 Sm. & M. Ch. Rep. 26; Hilliard on Inj. 111, § 90 a, 92; 4 W. C. C. Rep. 174; *Turner* v. *Scott,* 5 Rand. Rep. 332; *Harrington* v. *Am. Ins. Co.* 1 Barb. 224; *Hightour* v. *Rush,* 2 Hay's Rep. 361; *Baird* v. *Moses,* 21 Ga. Rep. 249; *West* v. *Smith,* 1 Green Rep. 309; *Depeyster* v. *Graves,* 2 Johns. Ch. Rep. 148; 2 Green Ch. Rep. 458-9; *Moat* v. *Holbien,* 2 Edw. Ch. 88; *Partington* v. *Booth,* 3 Meriv. Rep. 148; Barb. Ch. Pr. 636; 4 Paige's Ch. Rep. 163; 8 Id. 45; Hilliard on Inj. 142.

*C. B. Eddy* and *H. E. Stoughton,* for respondents, cited Hilliard on Inj. 149, § 32; *Elliot* v. *Osborne,* 1 Cal. Rep. 396; 1 Barb. Ch. Pr. 631, 633, 634; *Skipp* v. *Howard,* 3 Atk. 564; *Hearne* v. *Tenant,* 14 Ves. 136; Smith's Ch. Pr. 623-4; *James* v. *Downes,* 18 Ves. 522; 3 Dan. Ch. Pr. 1773, 1775, 1783; Gen. Stat. 253, § 55; Hilliard on Inj. 520; Gen. Stat. 249 §§ 19-20; 4 Paige 439; 5 Id. 85; 2 Mad. 225; Rule 26 in Chancery.

BARRETT, Chancellor, delivered the following opinion:

On the 7th of August, 1867, Mr. Howe obtained an order made by PIERPOINT Ch. J. as Chancellor, in pursuance of which, on the

8th of said August, the clerk of the court of chancery issued a writ of injunction restraining Mr. Willard, and all persons acting under him, from removing from the possession of the said Howe during the pendency of said suit, or until the dissolution of said injunction, or until such further order as the court should make in the premises, the law library of the late Hon. Wm. C. Bradley, deceased, which had been for some time before, and was at the time of Mr. Bradley's death, and continued to be, in the keeping of Mr. Howe, under some arrangement between him and Mr. Bradley. Mr. Willard, as executor of Mr. Bradley's will, claimed the right, and was about to use a writ of replevin, to take said library from the possession of Mr. Howe. Mr. Eddy, as attorney of Mr. Willard, had made such writ, and on the 9th of August went from his place of residence, Bellows Falls, to Brattleboro, where Mr. Howe resided and kept the library, for the purpose of having it served. On presenting it to Mr. Herrick, a deputy sheriff, he was told that Mr. Howe had put into his (Herrick's) hands a bill in chancery and injunction, with directions to serve said injunction on any one whom he should see meddling with the library, and he then exhibited them to Mr. Eddy, who examined them.

The bill was the one presented to the chancellor, upon which the order for said injunction, issued by the clerk as aforesaid, was made ; and the injunction was the one so issued. The bill had been filed by the clerk on said 8th day of August, pursuant to the order of the chancellor, and his certificate of such filing was duly indorsed thereon. A subpœna dated the same day, signed by the clerk in common form, was appended to said bill, returnable to the September term of the court, which was to commence on the 10th day of that month. Upon such examination Mr. Eddy concluded not to have said writ of replevin served. Mr. Willard was a resident of Hudson, N. Y., or Washington, D. C., but was spending the summer with his family in Charlestown, N. H., and was often at Bellows Falls and Westminster, and occasionally at Brattleboro, in said county of Windham, during said month of August. Considerable evidence has been exhibited showing various propositions by Mr. Eddy to Mr. Howe for some arrangement for having the bill and injunction served on

Mr. Willard, and considerable conflicting evidence as to Mr. Howe's expression of a purpose not to have the same served, unless Mr. Willard, by himself or his agents should undertake to get possession of the library. It is needless to settle the disputed facts upon the evidence, for the reason that the decision of the matter in hand is to rest on ground of fact, about which there is not much disagreement.

The bill and subpœna were not served seasonably for said term of the court; no arrangement having been made in that behalf, and Willard not having been found within the State by the deputy sheriff. The last day for the legel service of the subpœna was the 29th of August. On the next day Mr. Howe procured a new subpœna of the clerk dated on that day, returnable to the next April term of said court, and substituted it for the one originally appended to said bill, and replaced the papers in the hands of said Herrick, with the same instructions as before. Mr. Eddy being of opinion that said injunction had become inoperative and void by the failure of service of the same with the bill and subpœna upon Mr. Willard seasonably for said September term, and Mr. Willard having been advised by counsel to the same effect, on the 6th day of September, caused a writ of replevin in his favor against Mr. Howe, to be put into the hands of said Taylor, sheriff of said county, with directions to replevy said library. Mr. Eddy accompanied Mr. Taylor, at his request, to Brattleboro, for that purpose. On arriving there it was found that Mr. Howe was absent, and that said library was locked up in Mr. Howe's office, and the key not to be found. Mr. Taylor procured another key and unlocked the door, and he and Mr. Eddy went in and began to take the books down from the shelves preparatory to taking them away by virtue of said writ. While they were in the process of thus taking down the books Mr. Herrick saw them, and at once forbade them to remove the books, telling them that he had said bill and injunction, which he then showed them, and which they took and made some examination of, and passed back. Mr. Eddy signified that he regarded the injunction of no effect for the reason aforesaid, and that he should have the writ of replevin served by the taking of said library. Thereupon Mr. Taylor and Mr. Eddy proceeded to take and remove said library, and it still remains in the hands of said Taylor.

At the September term of said court Mr. Howe filed his petition in said court for an order on said Eddy and Taylor to show cause why they should not be dealt with for *contempt*. Such order was issued, and evidence was taken showing the facts aforesaid.

I have stated only so much as seemed necessary in order to show the main ground on which the present proceeding is to be considered and determined. The views now to be expressed are concurred in by all the Judges who heard the argument.

A primary, and to a considerable extent, a controlling question is, whether the failure to have service made on said Willard seasonably for the term, to which said first subpœna was made returnable, operated a discontinuance of the proceedings, so that the order of the Chancellor and the injunction, issued in pursuance of it, became vacated and void. Our statute, ch. 29, sec. 55, enacts, that " no injunction shall be issued in any case until the bill shall have been filed." Sec. 56, " the issuing of a subpœna, attached to a bill, shall be deemed the filing of the bill." It was not the purpose of the latter section to exclude any other mode of filing a bill, but rather to provide a mode by which, for the purpose of issuing an injunction, it might be regarded as filed, without requiring it actually to be filed in court, according to the law and practice independently of the statute. This is evident from other provisions of the same chapter. For instance, in sec. 21, when the defendant is out of the State, so that a subpœna cannot be served on him, the complainant may file his bill or petition in the office of the clerk, and the clerk shall issue an order to be published three weeks successively, the last publication to be at least twenty days previous to the term at which the defendant is required to appear. It is beyond question that, in such case, upon a bill thus filed, a subpœna need not be attached, and still the bill would be *filed*, so as fully to comply with the statute requiring it to be filed before an injunction should be issued. For it will hardly be suggested that an injunction might not as well be granted against a non-resident defendant, his agents, servants and attorneys, upon whom, by reason of his non-residence, a subpœna could not be served, as against a resident on whom a subpœna could be served. This would strongly indicate that the 19th and 20th sections of chap-

ter 29 were not designed to make, as is claimed, the bill and subpœna *one-process.* In the present case it would have been legitimate for Mr. Howe to file his bill in the clerk's office and not have a subpœna appended and to take an order for notice to be published, calling on the defendant to appear and answer at the next April term instead of the September term, as, at the time he applied for the injunction, there was not sufficient time to give notice in that way for the September term. He, however, did take a subpœna, and that was, as it must have been, made returnable to said September term. He, at the same time, had his bill actually filed, and the certificate thereof duly endorsed on it by the clerk. If he should get the subpœna seasonably served, he would not need to resort to any other mode of service ; but if he should not, it would seem to be a strange effect to give to the fact of his taking a subpœna and failing to get it served, to hold that thereby he lost any right that he would have had if he had not taken such subpœna. Sections 19 and 20 do not purport to make the bill and subpœna one process. Section 19 provides that process, issued out of the Court of Chancery shall be signed by the clerk, or a chancellor. without defining what shall constitute process. It may be *original* as a subpœna. It may be *final*, as an execution. It may be a writ of sequestration, or it may be an injunction. Section 20 only provides that the *original subpœna*, with the bill, shall be served in the same manner as writs of summons. That obviously is designed to apply to cases in which service is to be made for the purpose of bringing the party into court to answer the bill and await upon the proceeding in due course of ordinary litigation in that court ; and only to cases in which the subpœna and service of it constitute the only mode of effecting that purpose. It does not undertake to connect the two as necessary to constitute the *process* meant in the preceding section, but only to prescribe the mode in which the *subpœna* shall be served for the purpose intended, viz : it shall be served with the bill.

In the English Chancery law the subpœna is entirely distinct from the bill for all purposes. The bill is filed in the court before any subpœna is issued. It is issued in pursuance of the prayer of the bill thus filed, and its office is to compel the defendant to appear and answer the same. See Smith's Ch. Pr. 110. There is an exception

to the necessity of having the bill filed before subpœna is issued, when the bill prays that an injunction may be awarded against the defendant, in which case it. is sufficient if the bill be filed on, or before the day on which the subpœna is made returnable. See *Ib.* The subpœna alone is served, the bill remaining on file ; and successive subpœnas may be obtained to meet the various exigences that . may require this to be done in the process of the cause.

Various considerations of supposed inconvenience and injury likely to result to the defendant have been suggested, as reasons why the court shall hold as claimed by the respondents. But they do not seem to be well grounded. When a bill has been presented to the chancellor for some preliminary or introductory order warranted by the law, the cause is then to be regarded as *pending in court* for all the purposes arising from, or incident to such order ; and for all such matters the court is at all times open and accessible to all the parties · affected thereby. If an order has been obtained *ex parte*, which affects the other party, and he has knowledge of it, he may at once, and at any stage, come before the court with any proper application in the premises, and invoke any action by the court that may be proper to secure his rights and serve his convenience. If, for instance, an injunction has been obtained which operates upon his interests, without having been served on him with the subpœna and bill, and which he desires to have dissolved, and in order thereto it is necessary for him to answer the bill, on application to the chancellor he could obtain an order that the subpœna with the bill should be served, or a copy of the bill furnished to him by a time named. In the present case, Mr. Willard, having been fully apprised of the existence of the bill and injunction, which had not been served on him seasonably for the September term, might have appeared in court at that term, and moved to have the cause entered on the docket, and it would have been so ordered, and then it would have . stood for all proper proceedings, the same as if the bill and injunction had been formally served.

If there had been improper delay in the service of the bill, or of the injunction, he might have appeared before the chancellor and moved for the dissolution or discharge of the injunction. The cause

was in fact pending in the court from the time the chancellor made the order for issuing said injunction. But though the defendant was not *bound* to appear and answer to it, still he was at liberty to do so, and it would not have been permissible for the orator to object.

Without taking further time to discuss or illustrate this aspect of the case, in the opinion of the court, the failure to serve the original subpœna with the bill and injunction, did not operate a discontinuance, affecting the validity and force of the order of the chancellor, or of the injunction issued in pursuance of it, and the same, notwithstanding such failure, were in force at the time said injunction was exhibited to the respondents by the deputy sheriff, on the occasion of taking away said library. The evidence is satisfactory that Mr. Howe did not *intend* to discontinue his bill or the order and process of injunction, and we think that the course he pursued did not work such a result.

This brings us to the inquiry, whether, even if it were shown that he improperly delayed to have said papers served, to such an extent as to constitute adequate ground for a dissolution of the injunction, on motion, for that cause, it was lawful or justifiable for the respondents to disregard and act in violation of it. On this point there seems to be entire uniformity in the text books and cases,—3 Dan. Ch. Pr. 1782, " although an injunction be irregularly obtained, it is still an order of the court, and must be discharged before it can be disobeyed." Eden on Inj. 102 ; Barb. Ch. Pr. 636 ; Edwards' Ch. Rep. 188, and notes.

No case or book has been cited showing that, in any case, does mere impropriety in using an injunction operate a dissolution or discharge of it, and leave a party, who is so charged with knowledge of it as to be amenable for contempt if he violates it, at liberty to violate or disregard it. The most that has been held is, that such impropriety may be good cause for a dissolution or discharge on motion. 3 Dan. Ch. Pr. 1783, (note 3,) and cases cited ; 2 J. C. R. 204 ; 5 Paige, 85 ; 1 Hopkins, 342. In the case of *James* v. *Downes*, 18 Ves. 522, the plaintiff, after obtaining an order, neglected for four months to have it drawn up or served. Lord ELDON would not proceed for contempt against the other party, who, after that lapse of

time, acted in disregard of it, his only knowledge of it being that he was present at the hearing of the motion. In Drewry on Inj. 399, in remarking on that case, it is said : " the distinction seems, that the defendant shall not escape the process. if he heard the motion, merely by turning his back upon the court so as not actually to hear it pronounced ; but that, on the other hand, the order is not to be kept suspended over his head for an indefinite length of time." That case does not apply to this, for the reason that the defendant, Willard, had full knowledge of the bill and injunction, and Mr. Eddy, his attorney, had seen it on the 9th day of August, and he and Mr. Taylor both knew of, and saw it on the 6th day of September, before they took the books, when it was presented to them as being in force to restrain them from so doing ; and for the still other reason that, in view of all that appears in the case, Mr. Willard did not put himself in position to entitle him to claim that Mr. Howe had unreasonably delayed making service of the bill. His knowledge of the bill and injunction charged him with the duty of regarding said injunction, and it was so known to, and served upon the respondents, as to charge them with the same duty. *Dawes* v. *Morgan*, 5 Price, 518. The defendant, in the bill, being non-resident in the state, it appertained to him, under the circumstances, to show that he had exposed himself to service to the knowledge of the orator or the officer holding the papers, so that service might have been made on him with reasonable convenience, without bargaining or watching for an opportunity.

Indeed, no question is made but that the defendant, as well as the respondents had sufficient notice and knowledge of the injunction to render it operative upon them, provided it was in force at the time the respondents took the library. The cases cited in their behalf, bear in their favor only as touching the order that the court should make, as to punishment by fine or otherwise for the violation of said injunction.

See *Partington* v. *Booth*, 3 Mer. 148 ; 4 Paige, 444.

In this case it is not claimed or shown that the respondents acted with the intent of violating or disregarding an injunction that was in force. They acted upon the honest, though erroneous opinion that

the injunction had expired. In so doing they violated the legal right of the orator. Full satisfaction to the orator, and to the court will be made by the restoration of the library to the possession of the orator, in the place and condition from which it was taken by the respondents.

A proper order will be made to effectuate such restoration.

The following order was made by the Chancellor:

GEORGE HOWE
     *v.*                IN CHANCERY—WINDHAM COUNTY.
HENRY WILLARD.

Upon the petition of said Howe, filed in said court on the 10th day of September, A. D. 1867, praying that Charles B. Eddy and Walter Taylor, both of Rockingham, in said county, might be made to appear before the Chancellor to show cause, if any they had, why they should not be dealt with for contempt in violating the injunction named in said petition, and an order having been made in the premises and duly served; and said Eddy and Taylor having appeared in compliance therewith, by themselves and their solicitor, and the matter of said petition having been fully heard and considered,—It is adjudged that said Eddy and Taylor are guilty of contempt of said court by taking and removing said library from the office and possession of said Howe, contrary to the order and injunction of said court, and that such misconduct was calculated to and did impair and prejudice the rights of said Howe, as set forth in said petition. Wherefore it is adjudged and ordered that the said Eddy and Taylor, and each of them, be attached of their body, and they, and each of them, be thereupon committed to the county jail in the town of Newfane, in said county of Windham, and be therein confined and imprisoned till discharged by the order of the court, and pay the costs of this petition, and the proceedings thereupon, and that process to that end be duly issued by the clerk of said court, *unless* the said Eddy and Taylor shall forthwith, and within six days from and after the the day on which notice of this order shall be served on them, return and restore said library to the possession of said Howe, in the place and condition from which it was taken by them as aforesaid; and

Howe *v.* Willard.

that this order be filed in the cause by said clerk, and notice of the same be given to said Eddy and Taylor by delivering to each a true copy hereof certified by said clerk to be a true copy under the seal of said court; the giving of said notice to be certified upon this order by the oath of the person by whom said copies shall be delivered as aforesaid.

Dated this 19th day of November, A. D. 1867.

JAMES BARRETT,
Chancellor.